UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


SHAWN F. COOPER                                    CIVIL ACTION

VERSUS                                             NO. 08-1583 c/w
                                                   No. 09-3682
                                                   (Order Ref: All cases)

UNITED PARCEL SERVICE, INC., and                   SECTION "F"
THE UPS FLEXIBLE BENEFITS PLAN


ORDER AND REASONS

Before the Court is the defendant's Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

## Background

Shawn Cooper, an African-American, worked for UPS in New Orleans for approximately 17 years. Prior to Hurricane Katrina, Cooper lived and worked in the New Orleans area; after the storm, he lived in Baton Rouge and commuted to New Orleans to work as a preload supervisor in New Orleans. Cooper states he requested a transfer to Baton Rouge and to be moved into plant engineering. His request was denied. Cooper asserts that UPS asked both him and a white employee to use their personal vehicles to deliver certain packages. At one point, both he and the white employee refused to do so. In August 2006, he was reassigned to work at the Harvey

1

Center as an on-road supervisor. He claims this was racially motivated: that UPS transferred him to Harvey because he refused to use his personal vehicle, whereas UPS did nothing to the white employee. Cooper notes this transfer resulted in 25 minutes of additional commuting time both ways.

In August 2006 Cooper began to experience heat exhaustion, muscle spasms, dizziness, and headaches while on the job. He saw his doctor twice in that month and was diagnosed with heat stroke, post-traumatic stress disorder due to employment stress, and migraine headaches triggered by heat, depression, and anxiety. His doctors recommended that he avoid high heat and high stress situations and that he take a medical leave of absence, which began on August 27, 2008. Cooper's doctor released him to work in January 2007 with restrictions, including no significant daily driving or excessive heat. Cooper requested these accommodations from UPS and UPS requested additional information from plaintiff's physician to complete his request. Cooper presented evaluations from Dr. Judith Levy and Larry Gooch, who both stated that Cooper was currently unable to perform the functions of his job. Dr. Levy recommended that he not drive and that he work in a climate-controlled setting. Gooch agreed, recommending that he work in a new environment under a new supervisor and use his engineering education. Both noted that there were no medications or corrective devices that would enable Cooper to perform the functions of his

2

position. Cooper claims that his requests for reasonable accommodations were denied by UPS and he was not allowed to return to work in any capacity; UPS counters that Cooper was not "disabled," as defined by the Americans With Disabilities Act, and therefore, he did not qualify for reasonable accommodations.

UPS has an Income Protection Plan that allows eligible employees to continue to receive all or a portion of their salary while absent from work because of illness or accidental injury. Under the terms of the plan, an individual is subject to administrative separation if he is absent from work for twelve months. Pursuant to the plan, Cooper received his salary from August 2006 through March 2007. On September 11, 2007, UPS notified Cooper that he was subject to administrative separation under the terms of the plan because he had been absent from work for 12 months. UPS states that Cooper did not return to work nor submit additional information requested by UPS to indicate that he was disabled; Cooper retorts that he could not return to work because UPS refused to reasonably accommodate his disability. On August 13, 2008, UPS wrote again, noting that Cooper had been on a leave of absence for almost two years, and requesting additional medication information in support of his request for an accommodation, or that he return to work as an on-road supervisor by August 25, 2008. The letter indicated that if he did not comply, he would be subject to administrative separation. He

failed to do so, and UPS notified Cooper of his administrative separation from UPS on August 27, 2008.

Cooper filed an EEOC charge of discrimination alleging that he is disabled and was denied reasonable accommodations on May 2, 2007. In July 2007, he sent a memorandum to the EEOC alleging race discrimination, and he filed a formal charge of race discrimination on January 2, 2008. Cooper filed suit against UPS for employment discrimination due to race and disability and for retaliation in violation of Title VII.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See <u>id</u>. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is

appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A. Race Discrimination

To establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class, or, in the case of disparate treatment, can show that other similarly situated employees were treated more favorably. Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004); see

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[1] If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. Bryan, 375 F.3d at 360 (quoting McDonnell Douglas, 411 U.S. at 802). If the employer can do so, then the plaintiff must prove that the reason offered by the employer was a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804. "The plaintiff can meet this evidentiary burden by either providing evidence of intentional discrimination or evidence of establishing 'the falsity of the employer's explanation.'" Bryan, 375 F.3d at 360 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)).

UPS argues that plaintiff's claim of race discrimination as to his transfer to the Harvey location is untimely under Title VII because he filed the EEOC charge more than 300 days after the alleged discrimination. Plaintiff fails to dispute this assertion and the Court finds it has merit. As such, plaintiff's claim for race discrimination under Title VII for his transfer to the Harvey location is dismissed as untimely. The Court will, however, address the merits of this claim under Section 1981 as well as the merits of plaintiff's claim of racially discriminatory termination

---

[1] Plaintiffs' claims under Title VII and Section 1981 are both analyzed under this framework. Bryan, 375 F.3d at 360 (Section 1981); Shakelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999) (Title VII).

under both Title VII and Section 1981.

## Transfer to Harvey Location

There is no dispute that plaintiff belongs to a protected class. Plaintiff asserts being transferred to the Harvey location, which increased his commute by 25 minutes each way, was an adverse employment action. The defendant counters that this action does not qualify as an adverse employment action because plaintiff retained his status as a supervisor and his pay did not change. "[A]n employment action that 'does not affect job duties, compensation or benefits' is not an adverse employment action." Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (quoting Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003)). While a purely lateral transfer is not an adverse employment action, when a transfer is the equivalent of a demotion, it "qualifies as an adverse employment action." Alvarado v. Texas Rangers, 492 F.3d 605, 605 (5th Cir. 2007); Pegram, 361 F.3d at 283 ("[A]n employment transfer may qualify as an adverse employment action if the change makes the job objectively worse.") (internal quotation marks omitted).

Here, plaintiff's only complaint about being transferred to the Harvey location is that it added to his "already lengthy" daily commute from Baton Rouge. He states that he would have preferred to work in plant engineering, but does not assert that there was an available position or that he even applied for it. He does not

7

claim that the Harvey position was less favorable than his position in New Orleans in any way, other than the commute. The Court finds that increasing the length of plaintiff's commute is not sufficient to establish an adverse employment action.[2] See Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 331 (5th Cir. 2004) (holding that plaintiff had not suffered an adverse employment action when her transfer to a different location was "purely lateral" because the new position had "the same job title, benefits, duties, and responsibilities"); Duhe v. U.S. Postal Serv., No. 03-746, 2004 WL 439890, *10 (E.D. La. 2004) ("[T]ransfers requiring additional commuting time . . . [are not] changes in employment sufficient to support a claim of constructive discharge."); Gray v. Sears, Roebuck & Co., Inc., 131 F. Supp. 2d 895, 904 (S.D. Tex. 2001) ("[A]n assignment to a position which has equal compensation, terms, conditions, and privileges of employment - but which requires a longer commute - does not constitute an adverse employment action."). The plaintiff has failed established a *prima facie* case of discrimination due to his transfer.

### Termination

Plaintiff also asserts UPS unlawfully fired him based on

---

[2] The Court notes that in its Order and Reasons denying UPS's Motion to Dismiss, the Court stated that "whether the transfer constitutes an adverse employment action must be decided at trial." However, in light of the summary judgment record and caselaw addressing similar scenarios, the Court finds that there are sufficient facts to make this determination at this stage in the proceedings.

8

racial discrimination. However, he has submitted no evidence to establish a *prima facie* case of discriminatory discharge based on race. In fact, in plaintiff's deposition, he fails to even mention race as a reason why he thought he was fired. Additionally, plaintiff fails to point to any individual outside his protected class who replaced him or was treated more favorably. Finally, even if he had established a *prima facie* case, he has no response as to UPS's stated reason for his discharge (because he was on leave for more than 12 months, as stated in the written terms of the Income Protection Plan) was pretext for racial discrimination. As such, plaintiff's claims of racial discrimination under Title VII and Section 1981 are dismissed.

## B. Americans With Disabilities Act

The Americans With Disabilities Act provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." The Fifth Circuit Court of Appeals has stated that "[t]o prevail on an ADA claim, a plaintiff must prove that (1) he has a 'disability'; (2) he is 'qualified' for the job; and (3) an adverse employment decision was made solely because of his disability." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1092 (5th Cir. 1997). To

9

show that he has a disability, plaintiff must prove that he has a physical or mental impairment that substantially limits one or more of his major life activities. 42 U.S.C. § 12112(a). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). With respect to working, "substantially limits" means

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

UPS claims plaintiff is not a "qualified individual with a disability." A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C § 12111(8). While reasonable accommodations may include "[j]ob restructuring; part-time or modified work schedules; [or] reassignment to a vacant position," 29 C.F.R. § 1630.2(o)(2)(ii), "[t]he ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." Burch v. City of Nacogdoches, 174 F.3d 615,

621 (5th Cir. 1999).

UPS states that the essential job functions of an on-road supervisor include the ability to meet DOT requirements and work in an environment with variable temperatures and humidity. Both Dr. Levy and Gooch indicated that plaintiff could not work in a high heat or variable temperature environment; Gooch noted that plaintiff could not meet DOT requirements. Plaintiff focuses on the potential accommodation of reassigning him to a vacant position, noting that he requested to be transferred to a job in plant engineering. However, plaintiff has failed to even assert that there were any vacancies in plant engineering. Other than requesting to be transferred, he has not pointed out one reasonable accommodation that UPS could have taken that would have allowed him to perform the essential functions of his job. "[T]he ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job." Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 808 (5th Cir. 1997). He does not dispute that working in variable temperatures and humidity are essential to the job in which he was employed. He does not dispute his doctors' assertions that he cannot work in such conditions. Plaintiff has not shown that he could perform the essential functions of his job with or without reasonable accommodations. Therefore, his ADA claims must be dismissed.

## C. Retaliatory Discharge

To establish a prima face case of unlawful retaliation, the plaintiff must show: (1) that he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). Actionable retaliation includes actions which "a reasonable employee would have found . . . materially adverse"; this includes those adverse actions that "well might have dissuaded a reasonable worker" from undertaking the protected activity. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Protected activity under Title VII includes "(1) oppos[ing] any practice made an unlawful employment practice" by Title VII; and (2) making a charge, testifying, assisting, or participating "in any manner in an investigation, proceeding, or hearing" under Title VII. Byers, 209 F.3d at 427-28. The McDonnell Douglas burden-shifting framework applies to retaliation cases. Id. at 427.

Plaintiff alleges his termination in August 2008 was in retaliation for filing two EEOC charges alleging disability and race discrimination. UPS challenges the causation element of plaintiff's *prima facie* case; however, even assuming causation, plaintiff has not shown UPS's articulated non-discriminatory reason for his termination to be mere pretext for discrimination. UPS

points out that its Income Protection Plan provides that an employee will be administratively separated from employment if the employee is absent from his regular occupation for more than 12 months. UPS called this provision to plaintiff's attention on two occasions, once in September 2007 and once in August 2008, and asked for additional documentation in support of his disability to assist UPS in evaluating his claim and requests for reasonable accommodations. Plaintiff does not argue that he provided additional information; he merely concludes that UPS's failure to reasonably accommodate him somehow reveals pretext for his termination. But, even if UPS was incorrect as to its assessment of plaintiff's disability, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). Plaintiff has shown no evidence that UPS's motive was discriminatory or that it knew that its assessment of plaintiff's disability was false. Therefore, his retaliation claims fail.

Accordingly, the defendant's motion is GRANTED.

New Orleans, Louisiana, August 18, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE